IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**MICHAEL THURSTON,**
    Plaintiff,

v.                                                  Civil Action No. **3:24CV488 (RCY)**

**DR. WILLIAM McKENNA,** *et al.*,
    Defendants.

## MEMORANDUM OPINION

Michael Thurston, a Virginia inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action.[1] The matter is now before the Court for evaluation pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A. Thurston's claims and the action will be dismissed for failure to state a claim and as legally frivolous.

## I. PRELIMINARY REVIEW

Pursuant to the Prison Litigation Reform Act ("PLRA"), this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A. The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

---

[1] That statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d

761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. PROCEDURAL HISTORY

In his original Complaint, Thurston named Dr. Williams McKenna, an "Independent evaluator;" Special Justice Alexander M. Clark; and Henrico Doctor's Hospital Parham. ECF No. 4, at 1–2.[2] Thurston's allegations failed to provide each defendant with fair notice of the facts and legal basis upon which his or her liability rests*. See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). By Memorandum Order entered on November 27, 2024, the Court also explained that "[i]t is not clear [from] Plaintiff's submissions why he faults the three Defendants for violating his *federal* or *constitutional* rights. ECF No. 13, at 2. Accordingly, the Court directed Thurston to file a particularized complaint within thirty (30) days of the date of entry thereof. *Id.* The Court instructed as follows:

> a. At the very top of the particularized pleading, Plaintiff is directed to place the following caption in all capital letters "PARTICULARIZED COMPLAINT FOR CIVIL ACTION NUMBER 3:24CV488."
>
> b. The first paragraph of the particularized pleading must contain a list of defendants. Thereafter, in the body of the particularized complaint, Plaintiff must set forth legibly, in separately numbered paragraphs, a short statement of the facts giving rise to his claims for relief. Thereafter, in separately captioned sections, Plaintiff must clearly identify each civil right violated. Under each

---

[2] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the spelling, punctuation, and capitalization in the quotation from Thurston's submissions.

> section, the Plaintiff must list each defendant purportedly liable under that legal theory and explain why he believes each defendant is liable to him. Such explanation should reference the specific numbered factual paragraphs in the body of the particularized complaint that support that assertion. Plaintiff shall also include a prayer for relief.
>
> c.   The particularized pleading will supplant the prior complaints. The particularized pleading must stand or fall of its own accord. Plaintiff may not reference statements in the prior complaints.
>
> **FAILURE TO COMPLY WITH THE FOREGOING DIRECTIONS WILL RESULT IN DISMISSAL OF THE ACTION.** *See* Fed. R. Civ. P. 41(b).

*Id.* On December 18, 2024, Plaintiff filed his Particularized Complaint in two parts. The first part contains the five-page Particularized Complaint and is accompanied by exhibits. ECF No. 14. The second part contains a letter with more exhibits. ECF No. 15. The following day Plaintiff filed further exhibits.

As discussed below, although Plaintiff mentions "due process," in his Particularized Complaint, most of his allegations relate to purported violations of state law which are not viable claims in § 1983. Moreover, he fails to state a due process claim.

### III.   ALLEGATIONS AND CLAIMS

In his Particularized Complaint, Fowler names the same three Defendants: McKenna, Clark, and Henrico Doctor's Hospital Parham ("Defendants"). ECF No. 14, at 1. Thurston alleges as follows:

> 1.   On Feb. 10, 2021, I was T.D.O (temporary detention order) by Henrico Police and taken to Henrico Doctor's Hospital due to suffering from a mental illness episode. I was admitted in the psych ward at 11:02 p.m. Wednesday, Feb. 10, 2021.
>
> 2.   Va. Code 37-2-809 subsection H stated the duration of temporary detention shall be sufficient to allow for completion of examination required by 37.2-815 preparation of the pre-admission screening report by Va. Code 37-2-816, and initiation of mental health treatment to stabilize the person's psychiatric condition to avoid involuntary commitment where possible, but shall not exceed 72-hours prior to a hearing. If the 72-hour period herein specified terminates on a Saturday, Sunday or legal holiday, or if the individual has been admitted to a facility of temporary detention, day or part of a day on which the clerk's office is lawfully

4

closed, the person may be detained, as herein provided, until the close of business on the next day that is not a Saturday, Sunday, legal holiday.

3. After being assessed 2/10/21 by Drs, I was diagnosed bipolar, hallucinating (auditory & visual) delusional, labile, paranoid, suffering from psychosis, impaired judgment, manic, high anxiety, stressed, emotional pain, hopelessness, and lacked capacity along with psychotic and suicidal.

4. On February 12, 2021 @ 7:30 a.m., I was evaluated by Dr. William McKenna (Feb. 10, 2021 was a Wednesday, Feb. 12, 2021 was a Friday), had been in psych ward for 32 hrs without any treatment or meds at time of evaluation.

5. Va. Code 37-2-809 states if 72 hrs expires on Saturday, then evaluation is to be done on next business day which would have been Monday Feb. 15, 2021, being that no treatment had been initiated prior to Feb. 12, 2021 evaluation.

6. On evaluation morning, Feb. 12, 2021 at 7:30 a.m., I was asked on video with Dr. McKenna and Special Justice Clark and a CSB representative along with a mental health expert a series of questions about the president, year to date, my age and where I worked.

7. Unknown to me, CSB representative along with mental health expert had expressed commitment due to criteria found in assessment on 2/10/21.

8. I was told by Dr. McKenna that he hopes to look and be as in shape as I was at 42 and felt I was ok to discharge with no referrals.

9. Special Justice Clark agreed, and both discharged me A.M.A (against medical advice).

10. Va. Code 37-2-817 subsection C states after observing the person and considering (1) the recommendations of any treating or examining physician or psychologist license in VA, if available (2) any past actions of the person, (3) any past mental health treatment of person.

11. Any examiner's certification, (v) any health records available (vi) the pre-admission screening report, and [] any other relevant evidence that may have been admitted, if the judge or special justice finds by clear and convincing evidence that (a) the person has a mental illness and there is a substantial likelihood that, as a result of mental illness the person will, in the near future (1) cause serious physical harm to himself or others as evidenced by recent behavior causing, attempting, or threatening harm an other relevant information, if any (2) suffer serious harm due to his lack of capacity, (b) all available less restrictive treatment alternatives to involuntary inpatient treatment that would offer a opportunity and determined to be inappropriate, the judge or special justice shall by written order and specific findings so certify that the person be admitted involuntarily to a facility for a period of treatment not to exceed 30 days from the date of court order.

12.    By not following these Va. Codes all three Defendants violated my due process clause of the 14th Amendment of the United States Constitution.

13.    In all enclosed medical paperwork form 2-10-21 to 2-12-21, it shows I met all criteria to be committed and to receive treatment and care for all the DSM-15 diagnosis the hospital had identified but failed to properly treat and keep me for the appropriate amount of time as described in Va. Code 37.2-809.

14.    All three Defendants' negligence is a direct and proximate result of Plaintiff's current life shattering legal/emotional issues that have altered mine and my famil[ies] life forever. My family has been ripped apart due to me not receiving any proper medical treatment.

15.    I was deprived of my due process rights because I feel the independent evaluator and Justice Clark made their decisions based on my appearance alone and didn't look over any medical paperwork that by law is critical in making decisions for someone (Plaintiff) whom couldn't make rational decisions for myself (please see attached medical forms) even after facility taken to for detention expressing commitment due to criteria found in pre-admission screening and medical history. As of 2-12-21 my life has been changed forever legally [and] emotionally.

ECF No. 14, at 1–5. Thurston asks for ten million dollars in damages. *Id.* at 5.

## IV. ANALYSIS

It is both unnecessary and inappropriate to engage in an extended discussion of Thurston's unidentified theories for relief. *See Cochran v. Morris*, 73 F.3d 1310, 1315 (4th Cir. 1996) (emphasizing that "abbreviated treatment" is consistent with Congress's vision for the disposition of frivolous or "insubstantial claims" (citing *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). In order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983).

### A. Defendant Clark is Entitled to Judicial Immunity

Thurston faults Defendant Clark—who was the Special Justice who presided over his commitment hearing—for releasing him. However, judges are absolutely immune from suits

6

under § 1983 for acts committed within their judicial discretion. *Stump v. Sparkman*, 435 U.S. 349, 355–56 (1978). "Absolute judicial immunity exists 'because it is recognized that judicial officers in whom discretion is entrusted must be able to exercise discretion vigorously and effectively, without apprehension that they will be subjected to burdensome and vexatious litigation.'" *Lesane v. Spencer*, No. 3:09CV012, 2009 WL 4730716, at *2 (E.D. Va. Dec. 3, 2009) (citations omitted) (quoting *McCray v. Maryland*, 456 F.2d 1, 3 (4th Cir. 1972), *overruled on other grounds*, *Pink v. Lester*, 52 F.3d 73, 77 (4th Cir. 1995)). A judge is entitled to immunity even if "the action he [or she] took was in error, was done maliciously, or was in excess of his [or her] authority . . . ." *Stump*, 435 U.S. at 356. This immunity extends to special justices in Virginia. *See Keeler v. City of Newport News*, No. 2:12cv235, 2013 WL 12155728, at *3 (E.D. Va. Feb. 19, 2013) (holding that the special justice "was empowered to act as a judge" and was entitled to absolute judicial immunity in determining whether to commit an individual (citing *Stump*, 435 U.S. at 356–57)). Only two exceptions apply to judicial immunity: (1) nonjudicial actions; and (2) those actions that, "though judicial in nature, [are] taken in complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991) (citations omitted). Neither exception applies in this instance.

      Thurston faults Defendant Clark for the actions he took in his civil commitment proceedings, and for his ultimate determination that Thurston did not need to be committed. Thurston fails to allege facts that plausibly suggest that these were nonjudicial actions or that Defendant Clark's actions were taken in complete absence of all jurisdiction. Accordingly, Defendant Clark is entitled to immunity, and any claim against him will be DISMISSED for failure to state a claim and as legally frivolous.

### B. Thurston Alleges Violation of State Law

The crux of Thurston's Particularized Complaint alleges that Defendants violated state law when they determined that he did not need to be civilly committed at that time. Thurston mentions "due process" twice in the body of his Particularized Complaint. He contends that "[b]y not following these Va. Codes all three Defendants violated my due process clause of the 14th Amendment of the United States Constitution," ECF No. 14 ¶ 12, and that he "was deprived of my due process rights because [he] feel[s] the independent evaluator and Justice Clark made their decision based on my appearance and didn't look over medical paperwork . . . ." *Id.* ¶ 15. As a preliminary matter, Thurston's allegation that Defendant Clark did not base his conclusion that Thurston should be released on his medical record is entirely speculative. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (explaining that "where the well-pleaded facts do permit the court to infer more than the mere possibility of misconduct . . . [the complaint] has not 'shown'—'that the pleader is entitled to relief'" (quoting Fed. R. Civ. P. 8(a)(2))); *Cochran*, 73 F.3d at 1317 (explaining that "[s]pecificity is necessary so that prison officials are not required to file unnecessary responses to speculative allegations"). Second, Thurston essentially argues that under state law, Defendants should have decided to commit him. To the extent that Thurston argues that he was entitled to be committed under state law, alleged violations of state law alone cannot form the basis of a due process claim. *See Riccio v. Cnty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990).

Thurston also fails to identify how Defendants McKenna or Henrico Doctor's Hospital violated his due process rights. The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. *See Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 569–70 (1972). Thus, the first step in analyzing a procedural due process claim is

8

to identify whether the alleged conduct affects a protected liberty or property interest. *Beverati v. Smith,* 120 F.3d 500, 502 (4th Cir. 1997) (citations omitted). Thurston fails to explain how he had a legitimate, protected liberty or property interest in being civilly committed.[3] Accordingly, Thurston's claims against Defendants McKenna and Henrico Doctor's Hospital will be DISMISSED for failure to state a claim and legally frivolous.[4]

## V. CONCLUSION

For the foregoing reasons, Thurston's claims, and the action, are DISMISSED for failure to state a claim and as legally frivolous. The Clerk will be DIRECTED to note the disposition of the action for purposes of 28 U.S.C. § 1915(g).

An appropriate Final Order will accompany this Memorandum Opinion.

/s/ RCY
Roderick C. Young
United States District Judge

Date: February 28, 2025
Richmond, Virginia

---

[3] To the contrary, due process more than likely required that, to involuntarily commit Thurston, a judge must find by clear and convincing evidence that Thurston had mental illness and was a danger to himself and others. *See* Va. Code Ann. § 37.2-817 (West 2024). To comport with due process, an individual "may be held as long as he is both mentally ill and dangerous, but no longer." *Foucha v. Louisiana*, 504 U.S. 71, 77 (1992). "[A]s a matter of due process . . . it [is] unconstitutional for State to continue to confine a harmless mentally ill person." *Id.* (citing *O'Connor v. Donaldson*, 422 U.S. 563, 575 (1975)). By not committing Thurston, Defendant McKenna and Defendant Clark clearly found one of those two mandatory elements missing. Thus, contrary to what Thurston argues here, *committing* Thurston may not have satisfied due process. Again, Thurston fails to plausibly allege that Defendants violated his due process rights by choosing not to commit him.

The Court also notes that from Thurston's attachments, Thurston's counsel argued at the hearing that Thurston should be discharged, and he "arranged for 2 witnesses IP's mother and brother to participate in the hearing and both stated they supported discharge today." ECF No. 14, at 14. The Commitment Hearing Disposition Note also reflected that: "Independent evaluator William McKenna supported dismissal stating IP's symptoms could be treated on an output basis." *Id.* Thus, at the time of the hearing, Thurston's position was that he *should not be* committed.

[4] At most, to the extent that Thurston believes he was erroneously discharged instead of being committed, his claim sounds in negligence, which is not actionable under § 1983. *Pink v. Lester*, 42 F.3d 73, 75 (4th Cir. 1995) (explaining that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property" (citation omitted)).